IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITH DIXON,<br><br>    Plaintiff,<br><br>    v.<br><br>MONTEREY FINANCIAL SERVICES, INC.,<br><br>    Defendant. | Case No. 15-cv-03298-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO STRIKE; AFFORDING PLAINTIFF LEAVE TO AMEND**<br><br>Re: Dkt. No. 43 |

Before the Court is defendant Monterey Financial Services, Inc.'s "Motion for Summary Judgment [and] to Strike Plaintiff's Class Allegations," filed May 13, 2016. Plaintiff Edith Dixon has filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The following facts are undisputed.

On November 14, 2014, plaintiff engaged the services of Aamco Transmissions & Total Car Care and was billed $2274.76. (See Lucas Decl. Ex. A at 2.) To pay for the services, she signed an agreement titled "FlexPay Plus ACH Debit Authorization" ("the Contract"), in which she agreed to pay $1264.96 as a down payment and authorized Kahuna Payment Solutions to debit the sum of $190.15 from her bank account each month, for a total of twelve months. (See id. Ex. A at 1.) When she executed the Contract, plaintiff provided a telephone number ending in "1147" (see id.), which is a

---

[1] By order filed June 17, 2016, the Court took the matter under submission.

cellular telephone number (see Little Decl., filed May 13, 2016, Ex. A at 3.)  On November 18, 2014, the Contract was "assigned" to defendant "for servicing." (See Lucas Decl. Ex. B.)  Defendant thereafter "placed certain telephone calls, both manual and autodialed, to the phone number [p]laintiff provided in the Contract" (see id. ¶ 7), including calls made on May 7, 2015, May 19, 2015, and May 22, 2015 (see id. Ex. C at 19-21).

During the call made to plaintiff on May 7, 2015, plaintiff told defendant's representative, "I have, um, an attorney Todd Friedman, who helps me with, um, consumer mistreatment the way I'm being treated," and "[w]hat I'm going to do is contact Todd Friedman and have him contact you guys." (See Friedman Decl. Ex. A.)[2]

During the call made to plaintiff on May 19, 2015, plaintiff told defendant's representative, "I asked you guys not to call me and you can contact my attorney." (See id. Ex. B.)  When the representative then asked plaintiff why defendant needed to contact her attorney, plaintiff stated, "Because I'm turning this over to an attorney," and "because you guys keep calling me." (See id.)

During the call made to plaintiff on May 22, 2015, plaintiff told defendant's representative, "I am asking you to not call me anymore and contact Mr. Friedman." (See Little Decl., filed June 3, 2016, Ex. A.)  Defendant did not thereafter call plaintiff. (See Lucas Decl. ¶ 8.)

## DISCUSSION

In the operative complaint, the First Amended Complaint ("FAC"), plaintiff alleges defendant violated the Telephone Consumer Protection Act ("TCPA") when, after she "revoked her consent to be called by [d]efendant" (see FAC ¶ 8), "[d]efendant continued to call [p]laintiff on her cellular telephone" (see FAC ¶ 8), using an "automatic telephone dialing system" (see FAC ¶ 9).  Based on said allegations, plaintiff alleges two causes of

---

[2]The instant phone call, as well as the other two calls referenced below, lasted several minutes.  In each instance, the Court has quoted the portion of the call on which the offering party has relied.

2

action, titled, respectively, "Negligent Violations of the [TCPA]" and "Knowing and/or Willful Violations of the [TCPA]."  Plaintiff seeks to proceed on her own behalf and on behalf of a nationwide class.  By the instant motion, defendant argues it is entitled to summary judgment on plaintiff's TCPA claims, or, in the alternative, that the class action allegations should be stricken.

**A. Motion for Summary Judgment**

   **1.  Legal Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

//

//

### 2. Revocation of Prior Express Consent

Under the TCPA, it is "unlawful for any person" to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." See 47 U.S.C. § 227(b)(1)(A).

"Congress has delegated the FCC [Federal Communications Communication] with the authority to make rules and regulations to implement the TCPA." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953 (9th Cir. 2009). Acting pursuant to such authority, the FCC has implemented rules addressing the meaning of the statutory term "prior express consent." Specifically, the FCC has "conclude[d] that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt." See 23 FCC Rcd. 559, 564 (2008). Additionally, the FCC has concluded that, where a cell phone subscriber has provided consent, the subscriber "ha[s] the right to revoke consent," see 3 FCC Rcd. 7961, 7996 (2015), and may do so by "clearly express[ing] his or her desire not to receive further calls," see id. at 7997.

Courts defer to the FCC's interpretation of a term in the TCPA, so long as the term is "not defined by the TCPA" and the FCC's interpretation is "reasonable." See Satterfield, 569 F.3d at 954 (9th Cir. 2009). Here, the statutory term "prior express consent" is not defined by the TCPA, and the FCC's interpretation thereof, as set forth above, is reasonable. Indeed, neither party argues to the contrary or otherwise suggests the Court should not defer to the FCC's interpretation of the TCPA as set forth above. The Court thus defers to the FCC's interpretation and next considers whether, as defendant argues, it is undisputed that defendant called plaintiff only during times it had her prior express consent to do so.

As set forth above, it is undisputed that plaintiff, on November 14, 2014, provided her cell phone number on an application for credit, thus providing express consent to be called at that number regarding the debt. Also, as set forth above, it is undisputed that

4

defendant has not called plaintiff at that number after May 22, 2016, the date on which, during a telephone call she received from defendant, she told defendant, "I am asking you to not call me anymore and contact Mr. Friedman," and which statement, defendant acknowledges, "is the very sort of affirmative statement required for revocation." (See Def.'s Mem. of P. & A., filed June 3, 2016, at 4:16-18.)  Plaintiff responds that defendant is not entitled to summary judgment because she has offered evidence sufficient to support a finding that, prior to May 22, 2016, plaintiff had revoked her consent to be called by defendant.

Specifically, plaintiff argues that a triable issue of fact exists in light of statements made by plaintiff during the above-referenced phone calls she received on May 7, 2015, and May 19, 2015.  The Court next considers the statements on which plaintiff relies.

Initially, the Court finds unpersuasive defendant's argument that the statements, which were recorded by defendant at the time they were made, are insufficient to create a triable issue of fact in the absence of plaintiff's submission of a declaration in which she states "she intended to revoke consent" when she made the statements.  (See Def.'s Mem. of P. & A., filed June 3, 2016, at 2:21-23.)  Defendant has failed to cite any authority suggesting that the subjective intent of the plaintiff is relevant to whether consent has been revoked.  Rather, as the Eleventh Circuit has explained, "consent is terminated when the [person who obtained consent] knows or has reason to know that the other is no longer willing for him to continue the particular conduct."  See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1253 (11th Cir. 2014) (internal quotation and citation omitted).  Indeed, authority offered by defendant, albeit for other purposes, has rejected the very argument made by defendant here, and by the plaintiff there, that a plaintiff's subjective intent to revoke is relevant to show revocation, and, instead, considered only the words used by the plaintiff at the time of the events in question.  See Welch v. Green Tree Servicing LLC (In re Runyan), 530 B.R. 801, 807 (Bankr. M.D. Fla. 2015).  The Court thus turns to the words used by plaintiff during the subject phone calls.

//

First, plaintiff contends a trier of fact could reasonably find consent was revoked on May 7, 2015, when plaintiff stated, "I have, um, an attorney Todd Friedman, who helps me with, um, consumer mistreatment the way I'm being treated," and "[w]hat I'm going to do is contact Todd Friedman and have him contact you guys." (See Friedman Decl. Ex. A.) The Court disagrees. Although the referenced comments indicate plaintiff either had or intended to retain counsel to respond to defendant's inquiries regarding plaintiff's debt, plaintiff did not use any language that would cause defendant to know, or have reason to know, she was revoking her prior express consent to be called. Indeed, as one court, when considering a similar statement made by a plaintiff, explained, "[t]elling [the defendant] that it <u>could</u> do something hardly indicates that it <u>cannot</u> do something else." See Welch, 530 B.R. at 807 (emphasis in original).[3]

Second, plaintiff contends a trier of fact could reasonably find consent was revoked on May 19, 2015, when plaintiff stated, "I asked you guys not to call me and you can contact my attorney." (See Friedman Decl. Ex. B.) The Court agrees.[4] Indeed, the subject statement is substantially similar to that made by plaintiff on May 22, 2015, which statement, as noted, defendant acknowledges constituted a revocation, specifically, "I am asking you to not call me anymore and contact Mr. Friedman." (See Little Decl., filed June 3, 2016, Ex. A.) Even if plaintiff was incorrect as to how her earlier statement would be understood, a trier of fact could reasonably find that her statement on May 19, 2015, constituted an expression of her current desire not to further receive such calls.

Accordingly, defendant is not entitled to summary judgment on plaintiff's claims.

---

[3] As described by that court, the plaintiff stated that "he and his wife would not be able to settle the debt and provided [defendant] with the name and contact information for an attorney they hired to file for bankruptcy." See id. at 804.

[4] Plaintiff provided the Court with a disc containing the recording of the May 19, 2015, call. The Court, having listened to the recording, notes that plaintiff may have stated, "I'm asking you guys not to call me . . . .," as opposed to "I asked you guys not to call me . . . ." Given that the wording of the statement as asserted by plaintiff for purposes of this motion suffices to create a triable issue, the Court has not considered the potential alternative language.

**B. Motion to Strike Class Action Allegations**

In the FAC, plaintiff alleges she seeks to proceed on behalf of the following class:

> All persons within the United States who received any collection telephone calls from [d]efendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

(See FAC ¶ 13.)

Defendant argues the above-quoted language should be stricken from the FAC, on the ground the class, as proposed, is a fail-safe class.[5] As the Ninth Circuit has explained, "[t]he fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." See Kamar v. RadioShack Corp., 375 Fed. Appx. 734, 736 (9th Cir. 2010) (observing that where class is fail-safe, "once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class"). Certification of a fail-safe class would not only be "palpably unfair to the defendant," it would be "unmanageable – for example, to whom should the class notice be sent?" See id.

Here, although plaintiff offers a conclusory assertion that the proposed class is not fail-safe, plaintiff cites no authority in support of her position, and, indeed, the case she cites, albeit for another proposition, expressly found that a putative class essentially indistinguishable from the class defined here by plaintiff was an improper "fail-safe" class, for the reason that "defining [a TCPA] class to include anyone who received . . . a call

---

[5] As authority for its request, defendant cites to Rule 23, which, inter alia, provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." See Fed. R. Civ. P. 23(d)(1)(D). Although it is unclear whether the cited rule is procedurally applicable at this stage of the case, see, e.g., Beauperthuy v. 24 Hour Fitness USA, Inc., 2006 WL 3422198, at *3 (N.D. Cal. November 28, 2006) (holding motion under Rule 23(d)(1)(D) is "not ripe" when filed "before [a] motion for class certification is made"), the Ninth Circuit has held that neither Rule 23 nor any other rule precludes a defendant from bringing a "'preemptive' motion to deny certification." See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939 (9th Cir. 2009). Accordingly, as the issue of the propriety of the proposed class has been fully briefed, the Court will consider the matter.

without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." See Olney v. Job.com, Inc., 2013 WL 5476813, at *11 (E.D. Cal. September 30, 2013). As plaintiff's proposed class suffers from the same defect, it likewise is a fail-safe class, and, as such, is improper.

Plaintiff next argues that, should the Court find the proposed class is fail-safe, the Court should take no action at this time, and, instead, address the issue in the context of a motion for class certification plaintiff intends to file in the future. The cases cited by plaintiff in support of such approach, however, are distinguishable, as they involve situations where the class definition was not challenged as fail-safe until the defendant opposed a motion for class certification, see, e.g., In re Autozone, Inc., Wage and Hour Employment Practices Litig., 289 F.R.D. 526, 545-46 (N.D. Cal. 2012), or where, before the district court ruled on a motion challenging the proposed class definition as fail-safe, the plaintiff filed a motion for class certification in which the plaintiff revised the class definition such that the proposed class no longer was fail-safe, see, e.g., Olney, 2013 WL 5476813, at *11. Here, by contrast, plaintiff has not filed a motion for class certification, nor has plaintiff identified a proposed non-fail-safe class on which she intends to base a motion for class certification.

Accordingly, the class action allegations will be stricken from the FAC. The Court will afford plaintiff leave to amend to allege, if she can, a proposed class that is not fail-safe.

**CONCLUSION**

For the reasons stated above, defendant's motion is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks summary judgment on plaintiff's claims, the motion is DENIED.

2. To the extent the motion seeks an order striking from the FAC the class action allegations, the motion is GRANTED, and the class action allegations are STRICKEN.

//

3.  If plaintiff wishes to file a Second Amended Complaint ("SAC") for the purpose of amending her class action allegations, plaintiff shall file such pleading no later than July 15, 2016.  If plaintiff does not do so within the time provided, the instant action will proceed on plaintiff's individual claims.

**IT IS SO ORDERED.**

Dated:  June 24, 2016

MAXINE M. CHESNEY
United States District Judge